Good morning. I'm Michael Nance. I was the trial attorney below for Mr. Bastian, Desmone Bastian. And his appeal raises two challenges to his bribery conviction. First is we challenge the sufficiency of the evidence of the bribery charge in light of the nature of the critical witness in this case, a woman named Sandra Moss. Her testimony was incredible on its face, and for that the remedy we submit is dismissal. Alternatively... And if you put Ms. Moss' testimony aside, Bastian admitted most of it. And certainly from the fact that his cell phone showed extraordinary levels of contact with her, including within three weeks prior to her arrest, including the fact that he cleared her through six or seven times, including sequentially at one period three or four times, including the fact that he said that he met her and only her after, I believe, a shift to meet at a gas station to smooch or whatever. And including the fact that he admits to having had paid sex with her, and then it shifted. Yes, he does. So from all that, why can't you just simply infer it, even if there are parts of Moss' testimony which aren't totally believable? It sounds like you're making the other argument. I'm reading the record, and the district court found it said exactly the same thing. And why isn't the district court correct? Even if you do think that Ms. Moss was incredible, and I'm not suggesting that I think she was wholly incredible either, but what she said happened was, in effect, collaborated. And I guess I've neglected to add that he tapped into the security system after she'd gone into secondary to see what was going on. So from all those things, the bottom line question is, why can't you infer that he intended to accept consideration for passing her through the board? Well, if we come back to the elements of bribery, which is where I think we ultimately go, he's a public official. We openly concede that he had to have received or agreed to receive something of value in exchange for being influenced in the performance of his official duties, and he had to have acted corruptly. And we think there is a – there's no credible evidence of a quid pro quo Yes, he had contact with her. Yes, he had a prior sexual relationship. Yes, there was contact, telephonic contact. Yes, she came through his line. Yes, there was prearranged telephone contact. But he gave her the lanes that he was going to be in. Yes, he did. Yes, he did. Well, if you look at what constitutes primary inspection, you come back to that. It's simply a matter of checking an ID, asking a couple of questions, and the person passes through. His own chief, Chief Williams, testified. He was very good at it. He could do three in a minute, one every 20 seconds. And if you think about it, if all you're doing is looking at an ID and asking a couple of questions, you know, where are you going, how long will you be there, and is this your vehicle, that's about what amounts to an inspection. Let me ask you this. If I have no relationship with somebody, except I like them, you know, just another person on the Canadian side, and I like them, and I say, okay, I'm a border guard. So whenever you need to come through my station, I'm at station two, just come through. And so now that individual has the ability to cross the border knowing that one of those three-per-minute checks is basically nothing. It's just a formality. Are you saying that that would certainly violate the regulations of the Border Patrol, would it not? If you didn't know them and you told them to come through? Yeah. You allowed somebody that you knew. It probably would. Okay. So now let's add the element that the person happens to be a prostitute, and she's willing to provide sex in exchange for my doing that. Now do we have bribery? Well, that would be bribery. That was openly disputed, however. I understand it's disputed, but I'm just trying to understand where the tension point is. You seem to suggest that all he did was simply you're telling us what primary is. My hypothetical in the first one, and I hope it was clear, was doing precisely what you described as typical. So suddenly now you've got somebody who comes through on a preordained basis. It's like going to the airport and going through TSA, and you've got somebody who's a TSA who lets you go through the security. Yeah. They're checking it. But you know you'll never be sent to any kind of inspection that all you're going to do is, yes, your bags will go through, but they know who you are and they're going to let you go through. Your question assumes that that was the agreement. No, I'm just trying to understand the activity. Yes. Do you concede that it's enough to violate the statute if the border guard, for whatever reason, the element of failing to do official duty, the aspect of failing to do official duty, would be letting somebody on a preordained basis cross? Now, the question of whether it's bribery, you're saying, requires the quid pro quo. Well, first of all, if it was understood that she would simply be waved through, yes, that's wrong. That's probably, I suppose that would probably even qualify as bribery. But this wasn't that. It was come through my line. The inspection was still occurring. There wasn't much to it, but there wasn't much to it in any case. She popped her trunk, did she? I'm sorry? She never had to pop her trunk for him. She did not, but the popped trunk inspection happens in a tiny percentage of the overall cases. It's less than 10% of all the cases. For her, it's less than zero. Well, okay. She came through 17 times, and prior to being referred to secondary in April of 2006, she had had her trunk popped one time. She'd been inspected by eight other times. Now, if I wanted to smuggle something across the border, I guess knowing that if I went through Agent X, my trunk would never be popped and I'd never go to secondary, might be a very nice perk that would then make me begin to think about, well, I could really make some hay out of this preferred status, don't you think? Yes, if you knew that. If you knew that. If I were a terrorist, let's put it that way. Let's get serious about it and say that this wasn't just dealing in drugs, but maybe we've now got a border guard who liked the guy and decided to let him go through because he's such a nice guy. If he's checking his ID, if he's asking the questions, and if he doesn't, if nothing triggers the ---- Of course it's not, because he's agreed to just come through, let him through. Right. Now, it's a ---- Your point, though, is that in this case, she's not a terrorist. She was dealing drugs. He was acquitted of the drug aspect. Yes, he was. It's a question of whether or not ---- Yes, he was. He compromises official duties in exchange for ---- The other point I want to make, and I'm running out of time here, is that this jury, I believe there was a big risk here. This is a conflicted jury. It's acquitted on a substantial related count that it chose to express its disapproval of his social misbehavior. This is a uniformed guard who has a relationship with the press. Misbehavior. Absolutely. Because he's compromising his official activities. He's socially misbehaving. Well, he's got this out ---- he's got this relationship with a prostitute. And that's very troubling to this jury. And the risk is that they've punished him by convicting him of the available charge, the bribery. I'll reserve my minute. Okay. Sure. May it please the Court. Opposing counsel. The Court is right on the three elements. And, of course, the standard on this is reviewing the evidence in the light most favorable to the government, whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The Court's question seemed to indicate, and defense counsel's argument seemed to indicate, a question as to whether the sexual relationship continued. And there's significant evidence at trial that the sexual relationship did continue, although the defendant denied it at the time. Two pieces which are interesting are the Christmas card that was found in his locker at work with nude pictures of Ms. Moss, her notation to my favorite guy in uniform, and the real thing is just a phone call away. That Christmas card and nude photos had been delivered within the several months prior to her arrest in December, and she was stopped in April. So it shows the ongoing nature of the sexual relationship. As well as the gas station employee, who saw those two when they met south of the border often enough that the gas station employee testified that she thought their intimacy indicated they were a couple. So the defendant, of course, did admit all of the elements of bribery in his statement to the officers. He confessed to this. And then on the stand, he actually verified much of what Ms. Moss said. Their contacts, the phone records that he let her, of all the thousands of people he's ever allowed into the United States, she was the only person he prearranged and went to great lengths to arrange that she could come through his lane so he could wave her through. That he never examined her, conducted a neutral or assessment of her as his job was to do. His confession, as well as the other evidence alone. Excuse me. Can I just, so I understand the nature of the crime here. The nature of the crime, tossing out the drugs, he was acquitted of aiding and abetting the smuggling of dope. And unable to reach a verdict on the others. All right. So essentially, if all that had happened in this case was that he was caught allowing a prostitute friend all of the elements, there was never any drugs, no terrorist acts, nothing. All he was doing was giving her this wave or this pass through. And that's the only fact. That's still a bribery case. Well, the second element is that it's something of value. That he received something of value. And the third is that he did it correctly. That is, intending to influence his performance of his job. Here the quid pro quo is the continued sex, the free sex. He paid $150, $200 before for sessions with her. What would it have been if he had simply not, if there were no quid pro quo, would there have been any criminal violation or simply a violation of border patrol? Well, it clearly would have been violation of border patrol. It may have been other graft or other criminal violations. It's not the facts here that didn't exist. I know. I'm just trying to understand what the range of possibility is. If somebody is not performing their duty and there's nothing of the person who was crossing that was anything other than being accommodated, no other criminal activity involved, would the bribery statute reach it if there was, you're saying the bribery statute would reach it if there were a quid pro quo to give that person the free pass? If the employee received something or agreed to receive something of value in exchange for influencing, changing his performance. The several other facts and the other witnesses as well as the pieces of evidence that were admitted at trial, for instance, it's quite clear that she was bringing loads of marijuana and drugs through the border. John Cunningham, one of the government witnesses, talked about how she and he and other co-conspirators in his drug conspiracy knew of her customs guy, the guy at the border, and how relaxed she was as she brought her drugs through. He also spoke of how surprised he was that her loads of marijuana were not particularly disguised, that they were very visible in the car. Those were the loads she was bringing through the appellant's lane. Counsel, should we completely disbelieve her? Oh, Your Honor, no. So much of what she said was credible. It was supported by the defendant. It was supported by other people and other records. For instance, their meetings south of the border, her initial – their initial sexual relationships that he paid to have sex with her. There are really quite complicated arrangements for making sure she came through his lane at the border. Interestingly enough, she first told us about the meeting they had shortly before her arrest, after she was secondary, and that he had checked for her into the records to see whether there was a watch for her. That was, of course, verified both by the defendant who admitted it on the stand as well as by the internal affairs agent who investigated and found that the defendant had made a really furtive and unauthorized check of the records to see if she had been – if there was a watch out for her. Those were the intercepted calls that came from the Canadian Wire, which she discussed whether eyes were watching. And she had been reassured by Mr. Bastian that eyes were not watching. So much of what she said was corroborated both by the defendant and by other witnesses. Unless the Court has other questions. Pardon? The jury's finding that he was a public official, that he accepted free sex in performance of a – which affected his job should be affirmed. Mr. Grove? Mr. Nance? Yes. Just a couple of things here. The – Mr. Bastian received glowing commendations from his employers, his supervisors, up until this – these things came to light. The reference to the tech records is ambiguous. If anything, it also supports the notion that he could have learned about the mandatory referral that was in the system and warned her off. He did not do that. That was good circumstantial evidence that he wasn't in the know, wasn't trying to help her, wasn't going out of his way to help her. And I could go on and on about what was wrong with Ms. Moss's credibility. She repeatedly lied, repeatedly, to the grand jury on two different occasions, to law enforcement, and the stories, the embellishments seemed to increase as the government continually sweetened the favors they gave to her. And then finally, we believe there is no – if there's no free pass in the works for her, there's not a quid pro quo. There's not a bribery. Thank you. Thank you, Mr. Ness. We appreciate your argument. Yes. Both of you. The matter just argued will be submitted. The next argument in Marysanne Gault. Thank you.
judges: Fletcher, Rymer, Fisher